## Commonwealth *v.* Amzie, Appellant.

Argued April 6, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Warren H. Van Kirk,* with him *Adam B. Shaffer* and *John F. Stack,* for appellant.

*Chauncey E. Pruger,* Assistant District Attorney, with him *Andrew T. Park,* District Attorney, for appellee.

OPINION BY MR. JUSTICE STERN, May 25, 1936:

According to the Commonwealth's testimony in this case, defendant, a farmer, was annoyed by some boys who trespassed upon his property. He procured a shotgun and fired at them, and they ran into a ravine some distance away, defendant pursuing them with his gun. There the boys came upon a group of workmen who were employed by a light and power company to cut brush on a right-of-way across defendant's farm. Defendant said to the boys: "Get out of there," at the same time pointing his gun at one of the workmen, who put up his hands and told defendant that he was working for the Duquesne Light Company. At that juncture Frank G. Kitner, one of the workmen, stepped toward defendant. Defendant said to him: "I mean you, too." Kitner said: "I am a Duquesne Light worker." Defendant placed his gun against Kitner's side and pulled the trigger, riddling his body with shot and causing his immediate death.

The defense was principally that of insanity. Defendant himself did not take the witness stand. The Commonwealth introduced in evidence oral statements made by him to the effect that in a tussle with the deceased immediately preceding the shooting defendant's gun went off accidentally. The jury found a verdict of murder in the first degree with penalty of life imprisonment.

A witness for defendant, Nick Girnis, testified that he was present and saw what occurred, that Kitner came toward defendant with a "big stick" in his hand, that he raised the stick and struck defendant, that he grabbed the barrel of the gun and tussled with defendant for its possession, and that thereupon the gun went off.

Defendant has filed two assignments of error. The first complains that the court charged the jury that there was nothing in the case warranting an acquittal on the ground of self-defense. The court was not in error in refusing to submit this issue to the jury. The clear purport of Girnis's testimony was that the gun went off accidentally, not that defendant consciously fired it in order to protect himself. Moreover, none of the elements necessary to warrant a claim of self-defense was proved. Defendant was the aggressor from the start. There was no description of the "big stick," nor of the extent, if any, to which defendant was hurt or threatened by it. There was nothing to indicate that defendant could not readily have retreated, or that he was, or reasonably believed himself to be, in danger of grievous bodily harm. There was no adequate justification shown for shooting Kitner in such manner that death was almost certain to result. The court did present to the jury the contention that the gun went off accidentally, and this, apart from the defense of insanity, was all that the evidence called for.

Defendant's other assignment of error is that, toward the end of the charge, the learned trial judge said: "A man, according to the evidence in this case, while in the discharge of his duties, an honest laborer, was shot down in cold blood." Defendant contends that this was a withdrawal from the jury of the right to find that the shooting was perpetrated in hot blood and therefore did not rise higher than voluntary manslaughter. While the remark of the learned trial judge was perhaps unfortunate, it loses all semblance of serious error when the charge is read as a whole. Immediately following the phrase in question the court went on to say: "You are the jury to determine whether there was justification in doing that. Who did it? What were the circumstances under which it was done? Was it done accidentally?" Obviously the trial judge could not have meant to make the positive statement that the shooting was in

"cold blood" and in the same breath ask the jury to find whether or not it was accidental. It is evident the court meant that according to the *Commonwealth's* version the shooting was in cold blood. The charge at great length covered the law concerning voluntary manslaughter and the jury was instructed several times as to the various verdicts which they might render in the case. By finding defendant guilty of murder in the first degree the jury indicated their belief not only that the shooting was not committed in hot blood,—not only that the crime was one of murder,—but that it was also wilful, deliberate and premeditated. That defendant's counsel himself did not consider the court's remark as misleading or objectionable is shown by the fact that he took no exception to it.

The assignments of error are overruled and the judgment is affirmed.